IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**GWENDOLYN MIRANDA MOATS,**

Plaintiff,

v.                                                                    **CIVIL ACTION NO.: 1:20-CV-53
(KEELEY)**

**ANDREW SAUL,
Commissioner of Social Security,**

Defendant.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

This case arises from the denial of Plaintiff Gwendolyn Miranda Moats's ("Plaintiff")

Title II application for a period of disability and disability insurance benefits ("DIB") and

Title XVI application for supplemental security income ("SSI"). After Plaintiff's application

proceeded through the administrative process, a United States Administrative Law Judge

("ALJ"), concluded that Plaintiff was not disabled within the meaning of the Social Security

Act. Plaintiff's request for review by the Appeals Council was denied, making the ALJ's

decision the final decision of Defendant Andrew Saul ("Commissioner"), Commissioner

of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision.

Because the Commissioner's final decision to deny Plaintiff's claim for DIB and SSI

contains no legal error and is supported by substantial evidence, the undersigned reports

and recommends that Plaintiff's Motion for Summary Judgment [ECF No. 14] be **DENIED**

and Defendant's Motion for Summary Judgment [ECF No. 17] be **GRANTED**.

## II.  <u>PROCEDURAL HISTORY</u>

On May 5, 2014, Plaintiff filed applications for SSI and DBI, in which a hearing before the prior ALJ was eventually held on May 20, 2016. R. 322. The prior ALJ issued a decision on June 9, 2016, wherein he concluded that Plaintiff's severe impairments of lumbar spine disorder, asthma, and obesity did not qualify Plaintiff for disability benefits under the Social Security Act. R. 324-331.

On or about June 30, 2016, Plaintiff respectively filed the present claim for SSI and DBI, with an alleged onset date of disability of April 16, 2014. R. 501-508. Plaintiff later amended her onset date to November 7, 2016. R. 518-519. Plaintiff's application for DIB and SSI was initially denied on August 16, 2016, and upon reconsideration on December 30, 2016. R. 337-406. After these denials, Plaintiff requested a hearing before an ALJ. R. 409-410. On January 4, 2019, a hearing was held before an ALJ. R. 268-318. At the hearing, Plaintiff was represented by counsel and appeared in Petersburg, West Virginia, while the ALJ appeared from Cumberland, Maryland. R. 268. Dr. Larry Ostrowski, a vocational expert, appeared and testified at the hearing. R. 268-318. On February 11, 2019, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 246-257. On January 28, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1-4.

On March 25, 2020, Plaintiff, through counsel, John B. Krall, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. The Commissioner, through counsel Tara Noel Tighe, Assistant United States

Attorney, filed his Answer and the Administrative Record of the proceedings on August 26, 2020. Answer, ECF No. 9; Admin. R., ECF No. 10. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs. Pl.'s Mot. Summ. J., ECF No. 14; Def.'s Mot. Summ. J., ECF No. 17. Neither party filed a response. A hearing and oral argument was scheduled [ECF No. 21] and occurred before the undersigned on January 26, 2021. ECF No 22.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

### III.   BACKGROUND

**A.   Personal History**

Plaintiff was born on May 22, 1970, and was forty-six years old at the time she made her application for DIB and SSI. R. 13, 118, 274. She is approximately 5'4" and weighs 205 pounds. R. 275. She completed the eleventh grade in high school and never obtained a GED. R. 277. Plaintiff lives with her husband in a two-story house. R. 275. According to Plaintiff, she last worked on April 17, 2014, as a chicken grader at Pilgrim's Pride. R. 278-279. Plaintiff alleges that she is limited in her ability to work due to Type 2 diabetes, L4-L5 herniated discs, stenosis, asthma, and depression. R. 539.

**B.   Medical History**

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology

in narrative form of Plaintiff's relevant medical history. ECF No. 13 at 2. Accordingly, the undersigned relies upon those stipulated facts throughout this report and recommendation. See Mem. Supp. Pl.'s Mot. Summ. J. No. ECF 14-1 at 4-8; Mem. Supp. Def.'s Mot. Summ. J. ECF No. 18 at 2-8.

## IV.   THE FIVE-STEP EVALUATION PROCESS

To be "disabled" under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If it is determined that the claimant is "disabled" or "not disabled" during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V.   ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity for a continuous twelve-month period. R. 249. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: asthma, obesity, degenerative disc disease, lumbar disc

herniation, left lumbar radiculopathy, degenerative joint disease, mild osteoarthritis of the right knee, calcaneal spurring of the right foot, type II diabetes mellitus without complications, and depressive disorder. Id. At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. Id.  At step four, the ALJ determined that Plaintiff's RFC as follows:

> to perform sedentary work as defined in 20 CFR 404.1567(c) and 416.967(a) except: limited to climbing stairs and ramps occasionally with no climbing ladders, ropes, or scaffolds; limited to balancing, stooping, kneeling, and crouching occasionally and can do no crawling; must avoid concentrated exposure to extreme heat or cold, wetness/humidity, vibration, and irritants such as concentrated fumes, odors, dust, gases, or poor ventilation; must avoid all exposure to hazards such as heavy, dangerous machinery and unprotected heights; must be afforded the opportunity for a brief one or two minute change of position from seated every half hour without going off task; must provide for the allowance for use of a cane; can learn and perform simple, routine, repetitive, low-stress, 1-2 step tasks, but not at a fast production rate; capable of simple decision making and no supervisory responsibilities; limited to occasional interaction with supervisors and coworkers; can have no contact with the general public; capable of adapting to changes which are predictable and introduced gradually; and capable of carrying out short and simple instructions, maintaining attention and concentration when doing so, and completing a workday and workweek without interruption.

R. 251. Then, the ALJ determined that Plaintiff is unable to perform any past relevant work. R. 255. At step five, the ALJ concluded that Plaintiff is capable of performing other jobs in the national economy that exist in significant numbers. Id. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 256-257.

## VI.   <u>DISCUSSION</u>

### A.  Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." <u>Id.</u> (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005).

### B.  Contention of the Parties

In her Memorandum in Support of her Motion for Summary Judgment, Plaintiff contends that the ALJ's decision is unsupported by substantial evidence. ECF No. 14-1.

7

Plaintiff asserts that (1) the ALJ erred in finding that Plaintiff's degenerative disc disease does not meet Listing 1.04A; (2) the ALJ erred in not properly evaluating the opinions of Plaintiff's treating physicians; and (3) the ALJ erred in finding that Plaintiff has the RFC to perform sedentary work, and new evidence was not considered. Id. at 8-16. Based on the alleged errors, Plaintiff requests that the Court reverse the Commissioner's decision. Id. at 14-15.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence. ECF Nos. 17, 18. Addressing Plaintiff's arguments for summary judgment respectively, the Commissioner avers that (1) substantial evidence supports the ALJ's finding that Plaintiff's degenerative disc disease did not meet the requirements of Listing 1.04; (2) the ALJ properly evaluated the medical evidence; and (3) the ALJ correctly determined Plaintiff's RFC, and the additional submitted evidence does not require remand. ECF No. 18 at 9-15. Accordingly, the Commissioner requests that the Court affirm his decision. Id. at 15.

### C. Analysis of the Administrative Law Judge's Decision

#### 1. Substantial Evidence Supports the ALJ's Decision That Plaintiff's Degenerative Disc Disease Did Not Meet Listing 1.04A.[1]

Plaintiff argues that the ALJ erred when he found that Plaintiff did not satisfy Listing 1.04A because Plaintiff's medical history of back pain meets the requirements. ECF No. 14-1 at 9. Listing 1.04A states:

> 1.04 Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root …or the spinal cord. With:

---

[1] At the evidentiary hearing, Plaintiff chose to rely on the filings and did not present additional oral argument as to this issue.

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R.pt.404., subpt.P, app.1 § 1.04A.

The Listing of Impairments describes impairments that are so severe that an individual is prevented from performing any gainful activity. See 20 C.F.R. §§ 404.1525(a), 416.925(a). For the listing to be met, an individual must show that their condition satisfies all of the required elements.

Here, the ALJ found that Plaintiff did not meet the listing because the record demonstrated that Plaintiff had normal muscle tone and strength. R. 252. The ALJ explained how MRIs, objective medical evidence, demonstrated that Plaintiff maintained normal muscle tone prior to her proposed onset date of November 7, 2016. Id. Further, the medical evidence in the record did not support a worsening of Plaintiff's lumbar degenerative disk disease as of November 7, 2016. Id. The ALJ's conclusion is supported by the record. First, the ALJ cited Exhibit B8F, an MRI conducted on November 7, 2016, the onset date, which showed normal and unremarkable findings. R. 717. Importantly, the findings do not show a worsening or significant change from previous studies. Then, the ALJ observed that even though Plaintiff ambulates with a cane, the record shows that Plaintiff maintained normal muscle tone and strength. R. 252, (citing Ex. B11F/42, 48, and 52 and B29F/18, 22). Plaintiff's medical records from 2017 and 2018 observe Plaintiff had normal tone and motor strength. R. 809, 815, 819, 1515, 1519. In Exhibit B29F, Plaintiff denied to medical professionals that she had muscle weakness, incoordination, and tingling or numbness. R. 1515.

Plaintiff contends that the ALJ ignored Plaintiff's history of unsuccessful treatment for chronic back pain. ECF No. 14-1 at 9. However, the ALJ did indeed consider Plaintiff's medical history and the recommendations made by medical officials. R. 251-255.[2]

Because substantial evidence supports the ALJ's determination that Plaintiff exhibited normal muscle tone, and therefore did not satisfy all of the elements of Listing 1.04A, Plaintiff's objection as to this issue must fail.

### 2.  The ALJ Properly Evaluated the Medical Opinions in the Record.

Plaintiff argues that the ALJ erred in determining the weight assigned to Plaintiff's treating physicians. ECF No. 14-1 at 9-13. Specifically, Plaintiff contends that the ALJ should have assigned more weight to the opinion of Dr. Carmen Rexrode ("Dr. Rexrode") instead of affording significant weight to State Agency Medical Consultant Cindy Osborne, DO ("Dr. Osborne"). Id. at 10-11.

The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record.  20 C.F.R. § 416.927(d)(2) (2011); see also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. § 404.1527(d) (setting forth the same standard for Title II of the Social Security Act).  When an ALJ does not give a treating source opinion controlling weight and determines that the claimant is not disabled, the determination or decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

---

[2] Even if the ALJ had ignored Plaintiff's past treatment, it is unclear how this fact would allow Plaintiff to satisfy all of the required elements of Listing 1.04A.

opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). However, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). For example, the Commissioner is responsible for determining whether a claimant is disabled or unable to work. 20 C.F.R. § 416.927(e)(1). Therefore, a medical source that offers an opinion on whether an individual is disabled or unable to work "can never be entitled to controlling weight or given special significance." SSR 96-5p, 1996 WL 374183, at *5.

Here, the ALJ gave little weight to the medical opinions and statements of Dr. Rexrode. R. 254. The ALJ concurred with the prior ALJ that heard Plaintiff's disability claims, finding Dr. Rexrode's statements to be vague, overstated, and inconsistent with treatments records. Id. In his decision, the ALJ referred to the prior ALJ's assessment that the "check-the-box" form used by Dr. Rexrode contained no discussion and cites to evidence supportive of the conclusions. Id. Specifically, the ALJ disregarded Dr. Rexrode's statements that Plaintiff was limited to standing/walking less than two hours and sitting less than two hours in an eight-hour workday. Id. The ALJ found the statement unreasonable because it would preclude the Plaintiff from completing any competitive work activities, which he believed was inconsistent with the evidence in the record. Id. Additionally, the ALJ noted that Dr. Rexrode's most recent opinion indicated that there was no amount of weight Plaintiff could lift on a frequent basis. Id. (citing Ex. B33F/3). Conversely, the ALJ observed that the treatment records reflected that Plaintiff's lifting abilities consistently demonstrated normal strength. R. 254. Therefore, the ALJ did not

give Plaintiff's treating physician controlling weight, and Plaintiff was ultimately denied disability.

Here, the ALJ provided specific reasons as to why Dr. Rexrode's opinion was afforded little weight, which he supported with evidence in the record. Id. In reviewing the opinions of Dr. Rexrode, it is evident that Dr. Rexrode's conclusions are provided in a "fill-in-the-blank format" or indicated by circling an answer option in response to numbered questions. R. 912-916, 1486-1491, 1531-1567, 1571-1575. Little to no explanations are provided, just Dr. Rexrode's brief conclusion. Id. For example, in Ex. B29F, Dr. Rexrdoe simply provided check marks to indicate that Plaintiff could sit or stand for less than two hours in the day without explaining the basis for the conclusion. R. 913.

The ALJ then explained why he concurred with the prior ALJ's assessment. First, the ALJ included a block quote in his opinion of the prior ALJ's decision, which explained why the prior ALJ discounted Dr. Rexorde's opinions. R. 254. The prior decision is part of the record [R. 319-336], and the ALJ clearly relied on it, as evidenced by its inclusion in the ALJ's decision. See id. Importantly, the ALJ may rely on a prior opinion and incorporate it by reference. See Danson v. Astrue, TMD-07-1235, 2009 WL 2366295, at *2 (D. Md. July 30, 2009) (recognizing that the ALJ can demonstrate how they arrived at their findings through incorporation by reference to a prior opinion as part of their narrative). Not only did the ALJ rely on the prior ALJ's assessment as to the same issues here, but he expanded on it.[3] The ALJ stated that limitations assessed by Dr. Rexrode

---

[3] At the hearing, Plaintiff asserted that the ALJ should not have relied on the prior ALJ's opinion because this is a different case and medical conditions can change. First, although medical conditions can change, this is generally the same matter as the one heard by the prior ALJ. Further, the ALJ here assessed Dr. Rexrode's opinions for the current period and found they were flawed for the same reasons mentioned by the prior ALJ and provided examples and an explanation for his decision. R. 254.

are "overstated for the current period at hand" because the findings of Plaintiff's "lifting abilities are at odds with his treatment records, which consistency showed normal strength." R. 254. The ALJ referred to Plaintiff's strength in his decision, especially pertaining to Plaintiff's lumbar degenerative disc disease. R. 249, 252. In his decision, the ALJ noted that during treatment Plaintiff had normal muscle tone and strength and cited to exhibits in the record. R. 252 (citing Ex. B11F/42, 48, and 52 and B29F/18, 22). The exhibits in the record cited by the ALJ confirm that in 2017 and 2018 Plaintiff maintained normal tone and motor strength. R. 809, 815, 819, 1515, 1519. Also, the ALJ discussed MRIs from 2015 and 2016 conducted on Plaintiff that objectively showed that there did not appear to be a worsening in Plaintiff's lumbar degenerative disc disease as of the alleged onset date. R. 252.

Further, the ALJ explained that he gave significant weight to the State Agency Medical Consultants' opinions, finding its conclusions to be appropriate. R. 253. The ALJ highlighted Dr. Osborne's conclusion that Plaintiff could only stand/walk for two hours in an eight-hour workday due to Plaintiff's significant history of degenerative disc disease and the use of a cane for ambulation. Id. (citing 372-373). Then, the ALJ cited to the finding that Plaintiff's normal strength made her capable of minimal lifting, and additionally, the lack of evidence to demonstrate a restriction on how long Plaintiff could sit. R. 253. This further demonstrates that the ALJ provided specific reasons, supported by evidence in the record, for assigning little weight to the opinions of Dr. Rexrode. Thus, the ALJ did not err in the weight assigned to Plaintiff's treating physicians,[4] and Plaintiff

---

[4] At the hearing on January 26, 2021, Plaintiff for the first time argued that the ALJ erred by assigning little weight to a treating psychiatrist's opinion. This was not argued in Plaintiff's brief. In the section of Plaintiff's brief that addresses the issue of treating physicians and conflicting opinions, Plaintiff only argues that that the ALJ erred by giving more weight to Dr. Osborne over Dr. Rexrode. See ECF No.

has failed to demonstrate that Dr. Rexrode's opinions were not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2) (2011).

### 3. The ALJ Properly Determined Plaintiff's RFC, and There is No Error in the Consideration of New Evidence.

Plaintiff appears to make multiple arguments in this section. First, Plaintiff claims that the ALJ erred in assessing Plaintiff's RFC because he did not consider her urinary leakage issues.[5] ECF No. 14-1 at 13. Second, the Appeals Council should have considered Dr. Hahn's records that Plaintiff submitted as new evidence after the ALJ's unfavorable decision. Id. at 13-15.

### A. Plaintiff's RFC

The ALJ determined that Plaintiff had the RFC to perform sedentary work with certain exceptions. R. 251. In determining Plaintiff's RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." Id. Further, the ALJ "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527

---

14-1 at 9-13. Although Plaintiff refers to "treating physicians" in the heading to this section, Plaintiff does not address anyone beyond Dr. Rexrode. It is difficult for the Court to review this matter (and for the Commissioner to fully respond) when the issue is first raised at oral argument. Further, Plaintiff did not name the psychiatrist at issue. Because the ALJ's evaluation of the psychiatrist has not been previously raised, the Court will conduct a limited review. The undersigned believes Plaintiff is referring to the medical source statements of James Fridley, M.D. R. 255. However, the ALJ explained that little weight was accorded to these medical source statements that "identified marked limitations in persisting, maintaining pace, adapting in the workplace, and managing oneself in the workplace." Id. The ALJ explained that the "limitations are not supported by any of the treatment notes or other evidence in the file." Id. Specifically, that Plaintiff consistently showed normal judgment and focus during her treatment at Potomac Highlands Guild. Id. Further, the ALJ discussed the treatment records from Potomac Highlands Guild and cited to multiple exhibits throughout his review, his conclusions, and the bases for the ALJ's opinion. R. 250-251. The ALJ also factored Plaintiff's mental issues in the RFC. Because the ALJ took the information in the record into account, weighed it, and explained his bases, the undersigned finds no error.

[5] Importantly, while Plaintiff claims that her urinary leakage would alter her RFC, the Plaintiff did not allege it as a disability in her application for benefits. R. 349, 361-362, 364, 380, 539. Plaintiff also did not argue that her urinary leakage caused her functional limitations in her function report.

and 416.927." Id. Plaintiff herself testified before the ALJ concerning her incontinence.[6] R. 288-289.

Notably, Plaintiff claimed at the hearing before the ALJ that her urinary leakage has been an issue since 2004, approximately twelve years before she first filed a claim for benefits. R. 289. The ALJ was aware of and considered this condition in formulating his RFC and concluded that no further restriction was required.[7]

## B. Consideration of New Evidence

The Appeals Council will only consider "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision." 20 C.F.R. §§ 404.970(a)(5), 404.970(b). "New" evidence is not cumulative of what is already in the record. Wilkins v. Sec'y Dep't of Health & Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (superseded on other grounds, 20 C.F.R. § 404.1527). Further, there must be a

---

[6] Other references to Plaintiff's urinary leakage are present in the record: (1) a physician note in which Plaintiff complains that "something is wrong with her bladder, still having urgency" in February 2018 [R. 799]; (2) a reference to leakage among several additional reported symptoms and issues [R. 1448]; (3) a progress note by Dr. Hahn in September 2018, where the main issue addressed is urinary leakage [R. 1645]; and (4) a note where Plaintiff visited Dr. Hahn to schedule surgery for urinary incontinence [R. 1513-1520].

[7] Even if the ALJ erred by not specifically addressing Plaintiff's urinary leakage, this error is harmless as the ALJ considered all of Plaintiff's severe and non-severe impairments in formulating the RFC. At the hearing before the ALJ, Plaintiff claimed that she was experiencing problems with leakage. R. 288. As a result, she has to wear Depends diapers and has "to change them about four to five times in a day." R. 288-289. Plaintiff did not express being in any pain from this issue but expressed how the leakage impacts her. Id. Later in the hearing, the ALJ asked the vocational expert about sedentary jobs in the national economy and customary exceptions employers tend to allow such employees. R. 305-306. Specifically, when asked about the customary number and length of breaks, the vocational expert stated that employers typically allow for "breaks of 15 minutes in the morning, 15 minutes in the afternoon and 30 minutes for lunch." R. 306. Additionally, studies show that "an individual can be off task up to 10 percent of a work day or work period, and the individual still can achieve levels of productivity required by employers." Id. Plaintiff nor Plaintiff's counsel inquired as to whether the time allowed for breaks under this analysis addressed Plaintiff's proposed need to change her diapers due to leakage. R. 307-316. The ALJ established in his decision that Plaintiff was capable of performing sedentary work. R. 251. The record does not suggest that Plaintiff's urinary leakage and changing of her diapers would impact her employment and RFC. Further, Plaintiff did not object to the ALJ's decision not to list Plaintiff's urinary incontinence as a severe impairment or even as a non-severe impairment. Based on the classification of sedentary work and the lack of support in the record for urinary incontinence impacting Plaintiff's ability to perform sedentary work, any error by the ALJ was harmless.

"reasonable probability that the additional evidence would change the outcome of the decision" under current regulations. 20 C.F.R. § 404.970(a)(5).

Here, the ALJ rendered his decision on February 11, 2019. R. 243. Following the hearing and the ALJ's decision, Plaintiff submitted evidence regarding her urinary leakage to the Appeals Council. R. 60, 62, 63-65, 76-78. The evidence submitted to the Appeals Council are progress notes by Dr. Hahn, where Plaintiff refers to her urinary leakage. However, R. 60 and 62 are dated as October 4, 2019, several months after the ALJ's decision. R. 60, 62. Additionally, R. 63-65 is dated August 6, 2019, also after the ALJ's decision. R. 63-65. Although the records are dated after the ALJ's decision, the records pertain to a condition, urinary incontinence, that Plaintiff appears to have had since at least 2018, before the ALJ's February 2019 decision. See Pearson v. Colvin, No. 2:14-CV-26, 2015 WL 3757122, at *4 (N.D. W.Va. June 16, 2015). The final piece of evidence, R. 76-78, is dated January 22, 2019, prior to the ALJ's decision. R. 76-78. It is also a progress note by Dr. Hahn, where Plaintiff complaints of leakage. Id.

However, as previously discussed, evidence of Plaintiff's urinary leakage was already in the record from the transcript of the hearing on January 4, 2019, and additional documents. R. 288-289, 799, 1448, 1645, 1513-1520. The progress notes at issue generally assert that Plaintiff complained of leakage to Dr. Hahn. R. 60, 62, 63-65, 76-78. Therefore, the evidence is cumulative and addresses the same information that was already in the record. Even if the evidence could be considered "new," there still must be a "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Viewing the record in its entirety, particularly the ALJ's decision, it is unlikely that the Appeals Council would have found that the evidence

submitted after the ALJ decision was either new or material or would have changed the outcome of the ALJ's decision. Therefore, remand is inappropriate based on the Appeals Council's consideration, or lack thereof, of Plaintiff's evidence.[8]

## VII.   RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for DIB and SSI contains no legal error and is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 14] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 17] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

---

[8] "Because the Appeal's Council denial of a request for review is not subject to judicial review, this Court can not review the Appeals Council's reasoning that the records submitted by plaintiff do not fall within the relevant time period." Pearson v. Colvin, 2015 WL 3757122, at *4 (citing Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992)).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 4th day of February, 2021

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE